### PUTT ET AL. *v.* PUTT ET AL.

[No. 18,146. Filed November 23, 1897.]

WILLS.—*Contest by Cross-Complaint.*—*Cross-Complainant Not Required to File Bond.*—Where suit is brought to quiet title to real estate, the defendant may defend such action by cross-complaint, setting up the invalidity of the will upon which plaintiff bases his title to such real estate, and thereby contest the validity of such will without filing a bond as provided by section 2767, Burns' R. S. 1894 (2597, R. S. 1881), regulating the contest of wills. *pp. 34–36.*

SAME.—*Contest.*—*Practice.*—*Harmless Error.*—Where a will is set aside on the grounds of mental incapacity of testator and undue influence, such judgment will not be reversed on account of error of the court in its rulings in respect to the issue of unsoundness of mind alone, where the verdict and finding were sufficient to support

the judgment on either of such grounds of contest independently of the other.  *pp. 36-39.*

From the Noble Circuit Court. *Affirmed.*

*H. C. Peterson* and *H. G. Zimmerman*, for appellants.

*R. P. Barr, T. A. Redmond* and *L. H. Wrigley*, for appellees.

JORDAN, J.—On June 30, 1894, Levi Putt died at Noble county, Indiana, the owner of lands involved in this action, leaving surviving him his wife and five children. Prior to his death he executed the will in controversy, whereby he devised to his wife certain parts of his lands for life, with a proviso that his three daughters and Corwin Putt, his son, take what remained of said property at her death. The residue of his property, real and personal, he gave to his two sons, Charles F. and Corwin Putt, with the provision that they pay to Martha Putt, his wife, a thousand dollars for the benefit of their three sisters. Under the terms of this will Corwin was to pay to his brother, Charles F., the sum of five hundred dollars, and it was further stipulated that said Charles F. and Corwin were to pay all legal claims existing against the testator at the date of his death. Charles F. was nominated as the executor of the will, and on July 9, 1894, the will was probated in the Noble Circuit Court, and letters were issued to him as executor. The widow refused to accept the provisions made for her by the will, and elected to take under the law. On January 22, 1895, Charles F. Putt commenced this action for partition of the lands devised to him by said will, and to quiet his title thereto, making the appellees herein party defendants. Said plaintiff charged in his complaint that all of the appellees, except Martha and Corwin Putt, claimed some title and interest in the

lands which he sought to have partitioned, adverse
to him, which claim it was alleged was without right
and unfounded, and a cloud upon the plaintiff's right
and title in and to the real estate described in the
complaint, and he asked that his title to the same be
quieted as against such defendants, and that he,
Martha, and Corwin Putt, be adjudged the sole owners
of all of said lands, and that partition be made among
them as such owners. The defendants all appeared
and answered this complaint by a general denial. The
defendants, Flora Putt, Ida Emert, and Cassie Tegt-
meyer, filed a cross-complaint in two paragraphs
making Charles F. Putt, in his own person, and also
as the executor of the will of Levi Putt, and his wife,
Jennie Putt, together with their co-defendants,
Martha, Corwin, and Clara Putt, Martin Tegtmeyer,
and John Emert, parties defendant to the cross-com-
plaint. The second paragraph of this complaint is the
one upon which the judgment in this cause is based.
After averring the death of Levi Putt, as heretofore
stated, among other facts, it alleges that Charles F.,
Corwin, and the cross-complainants are the surviving
children of said Levi Putt, and that these children
and the widow, Martha Putt, are the only heirs of said
Levi. It is alleged at the time of his death that he was
the owner of real estate of the value of $10,000.00, and
personal property worth $1,000.00. The execution of
a pretended will by Levi Putt and the probate thereof,
and the respective interests of the widow and said
children as the heirs at law of Levi Putt, have and
hold, as tenants in common, in the lands described in
both the complaint and the cross-complaint, are all
averred and set forth.

The paragraph then charges that this pretended
will is invalid upon two grounds: First, that said Levi
Putt, at the time of its execution, was of unsound

mind; second, that the will was unduly executed. Other facts are alleged showing that the titles of the plaintiffs, Charles F. Putt and Corwin Putt, in and to the lands mentioned in their complaint, are based on said will, and that such titles and claims are false and unfounded, and cast a cloud upon the title of the cross-complainants to said real estate, etc., and the prayer is that the said pretended will be declared invalid, and the probate thereof be set aside, and that the title to the respective interests of the cross-complainants, as the heirs of Levi Putt in the lands, be quieted against all the defendants to the cross-complaint, and for partition thereof, and all other proper relief. This cross-complaint was verified by the affidavit of the cross-complainants. Charles F. Putt moved the court to dismiss the cross-complaint for the reason that no bond had been filed, as provided by the statute relative to the contest of wills. This motion was overruled, and he excepted. All of the defendants, including the plaintiff, Charles F. Putt, in his own person and as executor of the will, filed a general denial to the cross-complaint, and the cause was put at issue between the parties on their respective pleadings. On a trial before a jury, a general verdict was returned, finding in favor of the cross-complainants on the second paragraph of their complaint, that the will in controversy was invalid, and that the same and the probate thereof should be set aside, and that said cross-complainants and Charles F. Putt and the other defendants to the cross-complaint, were the owners in fee of the real estate in question in the undivided moieties as averred. The jury also returned, with their verdict, answers to a series of interrogatories submitted to them by the court at the request of the appellant. Over a motion for a new trial, the court ren-

dered its judgment declaring the will null and void, and that the same and the probate thereof be set aside, and awarded partition of the lands in accordance with the verdict of the jury, and quieted the title of the cross-complainants, and adjudged that they recover their costs, etc. Partition was made as ordered and finally confirmed by the court.

The errors relied on for a reversal of the judgment are based on the court's overruling the motion to require the cross-complainants below to give bond, as heretofore mentioned, and in overruling the motion for a new trial.

It is first insisted by counsel for the appellant that the court should have required the cross-complainants to give the bond provided by section 2767, Burns' R. S. 1894 (2597, R. S. 1881), in regard to contests of wills. This question is decided adversely to the contention of appellants in *Mason* v. *Roll, Exr.*, 130 Ind. 260. In the case cited, the executor of the will instituted an action against the children and heirs of the testator to quiet title to certain lands, which the will directed him, as executor, to sell. The defendants in that cause, as in this, appeared and answered the complaint by a denial, and also filed a cross-complaint whereby they assailed the will through which the plaintiff claimed his right to quiet title to the lands, on the grounds that the testator at the time of its execution was of unsound mind, and that it was unduly executed. The court, on motion, struck the cross-complaint from the files, for the reason that no bond was filed as required by the statute in question. On appeal, it was held that in this the lower court erred, and the judgment was reversed. The court, in its opinion, said: "We are of the opinion that the provision of the act (section 2596) regulating the contest of wills, which requires the complaint, or 'allegation

in writing,' as it is called, setting forth the grounds of the contest, to be verified, and a bond to be filed by the contestant, conditioned for the due prosecution of the action and payment of costs, is applicable only to cases where the contestant is the moving party; and that when an heir is, without his consent, brought into a court of equity by the executor of the will of his ancestor, or some other adversely interested party, and compelled either to contest the will in that action or permit its validity to be finally adjudicated against him, he may avail himself of all the defenses open to a defendant in a suit in equity, including the right to file a cross-action, bringing all parties in interest before the court, and contesting the will, just as he could have done had the statute never been enacted. In other words, that where an action of this kind is brought by an executor, it is a suit in equity, and may be defended as such without regard to our statute providing for the contest of wills."

The appellant in the case at bar, by his complaint below, expressly tendered to the defendants an issue of title to the lands which he seems to have claimed under his father's will, and thereby challenged them each and all, to assert and set up any legal or equitable defense, or claim of title, to the real estate adverse to his alleged claim, and had they failed to do so, they would have been thereafter forever barred by the judgment rendered in the action. *Faught* v. *Faught*, 98 Ind. 470; *Reed* v. *Kalfsbeck*, 147 Ind. 148; *Finley* v. *Cathcart*, *post*, 470.

These appellees having been by the complaint challenged to assert the interest which they claimed in the lands described in the complaint, and also to break down, if they could, the will, which was the foundation of the plaintiff's title, had the right, as they did, to respond to such challenge and expose the

invalidity of such instrument by a cross-complaint
and ask for affirmative relief thereunder, without re-
gard to the provisions of the section of the statute re-
quiring a bond upon the part of a contestant of a will.
We, however, must not be understood by this decision,
as holding that persons, after the expiration of three
years from the probate of a will, may assail its valid-
ity by a cross-complaint, or in any other manner. It
would seem to be the legislative will, as expressed by
section 2766, Burns' R. S. 1894 (2596, R. S. 1881), to
limit the right to attack the validity of a will, to three
years after the probate thereof, subject to the excep-
tions mentioned in section 2771, Burns' R. S. 1894
(2601, R. S. 1881). This right ought not to be extended
by judicial decisions so as to permit persons, not with-
in the exceptions provided, to assail its validity, by a
cross-complaint or otherwise, after the expiration of
the three years from the time of probate. The court,
under the circumstances, did not err in overruling the
motion in controversy.

The other alleged erroneous rulings of the trial
court discussed and urged upon us for reversal by the
learned counsel for appellants, and which in any man-
ner would even tend to show available error, have re-
lation wholly to the first ground of invalidity alleged
against the will, being that of mental incapacity of
the testator, at the time of its execution. These arise
out of the refusal of the court, at the request of the
appellants, to submit to the jury certain interroga-
tories. The facts therein embraced, and to which ap-
pellants desired answers returned, related alone to the
degree of mental capacity required under the law to
make a valid will.

Also, the giving by the court to the jury of certain
instructions, and its refusal to give others as re-
quested by the appellants. All of such instructions

refer alone to the issue of the unsoundness of mind of Levi Putt, and can have no bearing on the other issue of undue influence as involved in the action. If these rulings were conceded to be eroneous, we cannot say, in the absence of the evidence, that they exerted any influence over the jury in its determination of the issue of undue influence. The evidence is not before us, and counsel for appellants seek to present the questions arising on the instructions in dispute under rule thirty of this court. The learned counsel for appellees insist that if it were admitted that the court did err in its rulings in respect to the issue or subject of unsoundness of mind, that such errors were harmless, and will not secure a reversal, for the reason that the record affirmatively discloses that the jury found in favor of the appellees upon the issue of the undue execution of the will, and that this finding fully sustains the judgment, independently of the finding upon the other issue.

Among the interrogatories submitted at the request of the appellants are the following, with the answers of the jury thereto: "21. Was the testator, Levi Putt, at the time of signing, executing, and acknowledging the will in suit, under any insane delusion? Ans. Yes. 22. If you shall find that the testator, Levi Putt, was, at the time of signing, executing, and acknowledging the will in suit, subject to any insane delusion or delusions, what were they. Ans. He was under the insane delusion that his wife and daughters were persecuting him when they were not. 23. If you shall find that the testator, Levi Putt, was, at the time of the signing, executing, and acknowledging the will in suit, subject to any insane delusion or delusions, did such insane delusion actually enter into or affect the will in any of its provisions or cause its execution? Ans. Yes. 24. Was not the said testator, Levi Putt,

at the time of the execution of said will, a person of sound mind and capable of executing the same? Ans. No. 25. Was the testator, Levi Putt, at the time of the execution of said will, under any undue influence causing him to execute the same differently from what he otherwise would; and if so, in what manner and by whom was the same exercised over him? Ans. Yes, by his son, Charles Putt, by his controlling influence over him as shown by his being able to control him at all times and in all matters pertaining to business, or otherwise."

The general verdict of the jury, finding in favor of the appellees on the second paragraph of their cross-complaint, was sufficient to support the judgment on both or either one of the grounds of contest in issue in the case. By the interrogatory last set out, and the answer returned thereto, it is affirmatively shown, we think, that the jury found by their general verdict that the issue of undue influence was sustained. The question is not, as to whether the special finding, under the interrogatory in question, is alone a sufficient finding of the ultimate fact of the undue execution of the will, but the inquiry is, will it suffice to disclose that the general verdict included a finding on the issue of such influence in favor of the appellees? This question, in the light of the interrogatory in controversy, must be answered in the affirmative. This fact being positively established, it follows that the will was the offspring of undue influence, and the judgment of the court declaring it invalid, and setting the same aside, was a correct result. The judgment then resting, as it does, upon a sufficient foundation, independently of any finding on the issue or subject of mental incapacity of the testator at the time of the alleged execution of the will in suit, the latter, so far as it affects the result of this appeal, under the cir-

cumstances, may be eliminated from the case, and the alleged intermediate errors of the trial court on the questions relating alone to this issue, and which do not appear to have any bearing or effect upon the jury in reaching the result which they did on the second cause of alleged invalidity, may also be dismissed without consideration, for, even though such rulings of the court be conceded to be erroneous, they could not serve to operate in reversing the judgment. See Elliott's App. Proced., sections 592, 593, 632, 633, and 653; *Harter* v. *Eltzroth*, 111 Ind. 159. It is held in *Moore* v. *Lynn*, 79 Ind. 299, that an erroneous instruction will not serve to reverse a judgment where the answer of the jury to an interrogatory shows that the complaining party was not injured thereby. See, also, *Manning* v. *Gasharie*, 27 Ind. 399; *Uhl* v. *Harvey*, 78 Ind. 26; *Trentman* v. *Wiley*, 85 Ind. 33.

In *Minor* v. *Lumpkin* (Texas), 29 S. W. 799, it is held, where it appears that a judgment is based on two grounds, or findings, either of which, independently of the other, is sufficient to support the judgment, it will not be reversed because the court erred, relative to one of such findings. In the case of *In re Fenton's Will*, 97 Ia. 192, 66 N. W. 99, the probate of a will was contested on two grounds, first, mental incapacity; second, undue influence. The jury found in favor of the contestants on both. It was insisted in that appeal that the finding on the second was not supported by the evidence. The court, in course of its opinion, said: "If the finding as to either has support, the cause could not be reversed on the evidence. * * * * It is sufficient for us to say that we are so well satisfied with the evidence to support the finding that Mrs. Fenton was not of sufficient mental capacity to make a will, that we need not consider the other question."

The same doctrine is supported by the following

cases: *In re Spencer*, 96 Cal. 448; *Roberts* v. *Ball* (Cal.), 38 Pac. 949.

Complaint is made of certain questions propounded by the appellees to Doctor William Raby, on cross-examination. This witness was called and examined by the appellant on the subjèct of the testator's insanity, and the evidence sought to be obtained by the cross-examination, was on the same subject. The record, however, does not show that the witness responded to the questions in controversy, as propounded to him, or gave any evidence which was in any manner prejudicial to the appellant on any issue in the case.

It appearing that the judgment is amply supported and warranted by the finding upon the ground of undue influence, and is not in any way impressed with the alleged erroneous rulings of the court, it is therefore affirmed.

### DISSENTING OPINION.

HACKNEY, J.—I do not concur in the holding that a will may be contested upon a cross-complaint, in an action to quiet title, without the statutory bond. The holding that the statutory condition as to the time of waging à contest applies while that of the filing of a bond does not apply seems to me to be inconsistent. The right to contest is purely statutory, and, as has often been held, can only bè waged by complying with the conditions upon which the right is given. These holdings may not be obviated and the statute evaded by waging the contest by cross-complaint instead of complaint, and without compliance with the conditions as to time and bond.