LAKE ERIE AND WESTERN RAILROAD COMPANY
*v.* WYNN ET AL.

[No. 10,355. Filed April 30, 1920.]

ADVERSE POSSESSION.—*Elements.—Evidence Conflicting.—Appeal.*
—If the evidence is at least conflicting upon any one of the five indispensable elements of adverse possession, a judgment for the defendant must be affirmed, as against the plaintiff's objection on appeal that the evidence was insufficient to sustain the trial court's finding.

From Fulton Circuit Court; *Smith N. Stevens,* Judge.

Action by the Lake Erie and Western Railroad Com-

pany against Harrison W. Wynn and another. From the judgment rendered, the plaintiff appeals. *Affirmed.*

*John B. Cockrum* and *Holman, Bernetha & Bryant,* for appellant.

*Myers & Emmons,* for appellees.

McMahan, J.—Complaint by appellant against appellee Harrison W. Wynn and Sarah E. Wynn in two paragraphs to quiet title to certain real estate.

The first paragraph of complaint alleged title in fee, while the second alleged title by adverse possession. The real estate in question was triangular in form. Appellant's tracks run over and along the west side of the land. East of the railroad tracks there was located a coal yard, wagon scales, receiving yards and stock pens. There was a judgment quieting appellant's title to the land on which its tracks are located, and a judgment against it that it was not the owner of that part lying north and east of its tracks upon which the coal bins, scales, receiving pens and stock pens were located.

The only question involved in this appeal relates to that part of the judgment and decree wherein it was decreed that the appellant was not the owner of the land north and east of its tracks. Appellant contends that the decision of the court is not supported by sufficient evidence. Appellant's claim of title to the property in question is based upon adverse possession.

In order to establish title by adverse possession, there are five indispensable elements, namely: (1) Such possession must be hostile and under claim of right; (2) it must be actual; (3) it must be open and notorious; (4) it must be exclusive; and (5) it must be continuous. *Worthley* v. *Burbanks* (1897), 146 Ind. 534, 45 N. E. 779.

If the evidence upon any one of these elements is conflicting, the judgment of the trial court must be af-

firmed. The property in question is located in the village of Tiosa in Fulton county. Appellant's railroad was constructed over this land in 1865 or shortly thereafter. Its depot at Tiosa is located west of the railroad and on land not described in the complaint. The property in controversy is on the east side of the tracks opposite the depot. Prior to 1882 the stock pens, scales and receiving pen were located on the west side of the railroad. In 1882 they were moved to the land east of the depot and located on the land in controversy, where they remained until sometime in 1916 when they were moved to a point some distance south. The scales which were moved from the west side of the railroad to the east side were owned by Jacob Miller, who sold them to a remote grantor of appellee Harrison W. Wynn. That part known as the receiving pen was located immediately north of, and adjoining, the stock pens, and between the stock pens and the public highway. The scales were located north of the receiving pen.

Coal bins large enough to hold a carload of coal were erected between the receiving pen and the railroad and were maintained and used about fifteen years. There is now, and for the last twenty-five years or more has been, an elevator on private property west of the railroad track and south of the depot. A corn crib large enough to hold a carload or more of corn was erected by the owners of the elevator on the land now in controversy, and was used by the owners of the elevator until torn down in 1916. The evidence does not show when this crib was erected, although it appears that it was in use from fifteen to twenty-five years. There is no evidence that the appellant ever had the exclusive possession of the land in controversy lying north of the stock pens upon which the receiving pens, the corn crib and scales were located, or that it ever claimed to own such land, or to exercise any act of ownership over it.

The stock pens were about sixty feet long and were immediately south of the receiving pen. The only way to get into the stock pen was through the receiving pen. When any one other than the owner of the scales desired to ship any stock it was necessary for them to drive their stock into the receiving pen, and, after weighing, drive their stock back into the receiving pen and then into the shipping or stock pens. In all such cases, the owner of the scales charged the public a fee for weighing. Prior to 1882 Jacob Miller owned and operated a saw mill and used that part of the land now in controversy for a lumber yard. Appellee purchased the elevator on the west side of the railroad and the land occupied by the railroad company for its right of way, together with the land now in controversy, east of the railroad, subject to the rights of the appellant, in 1908, since which time he has claimed to own the land now in dispute. He used the corn crib. He shipped in fence posts by carload lots and piled them on this land. He bought hogs and turned them into shipping pens, where he would keep them and feed them until they were fat enough to ship. He turned his horses into the pens for exercise. He paid taxes on this land and exercised other acts of ownership over it. The appellant repaired and rebuilt the fence around the stock pens in 1908, but has made no use of the land east of its railroad since the stock pens were removed, although there is evidence tending to show that it was the intention of the appellant to move its depot onto the land in dispute.

We do not deem it necessary or profitable to set the evidence out in detail, or to enter into a further discussion of it. The evidence is at least conflicting upon the question of exclusive possession in appellant for a period of twenty years. Under such a state of the evidence, we cannot disturb the finding of the trial court.

The judgment is affirmed.