GEIGER *v.* UHL ET AL.

[No. 26,175. Filed March 11, 1932.]

*L. R. Zapf,* for appellant.

*Charles Remster, H. H. Hornbrook, Albert P. Smith, Paul Y. Davis, Kurt F. Pantzer,* and *Ernest R. Baltzell,* for appellees.

MARTIN, J.—The appellees bought a lot on the west side of North Meridian Street, south of Twenty-second Street, in the city of Indianapolis and erected thereon a brick business building. The appellant, who owns the north forty feet of the lot which adjoins appellee's lot on the south, claims that the building erected by appellees extends over upon his lot a distance of 4⅜ inches and brought this action against them in four paragraphs. The first paragraph was for possession and damages; the second, to quiet title; the third, in ejectment. The fourth paragraph prayed for all the relief sought in the other paragraphs and alleged that in laying out the Lazarus and Pierce Meridian Place addition to the city of Indianapolis a mistake was made in the measurements, in that in the tier of lots bordering on the west side of Meridian Street there is a shortage on the east frontage of about one foot and four inches and on the west end of that tier of lots of about one foot; that no adjustment of this shortage had ever been

made by the owners of these lots but that each had claimed and is claiming the full frontage as the same is shown on the plat and that the appellees, in the erection of their building, did not take into consideration any portion of such deficiency, which should be apportioned among the owners of that tier of lots. To the complaint appellees filed an answer in general denial. (None of the other owners of lots in the tier of lots mentioned in the fourth paragraph of complaint were made parties to the action.)

After a trial by the court a finding was made and judgment was rendered in the defendants' (appellees') favor. The alleged error relied upon for reversal is the overruling of appellant's motion for a new trial, wherein it is alleged that the decision is not sustained by sufficient evidence and is contrary to law.

The following facts are shown by the evidence. (There is not a great deal of conflict in the evidence, but where there is conflict, that submitted on behalf of the prevailing party below is stated) :

A gasoline filling station is located on lot 32 at the southwest corner of Twenty-second and Meridian streets (50 feet east frontage on Meridian Street with a brick business building located on the rear of the lot) ; south of the corner lot is the 50 foot lot (Lot 31) of appellees on which they have erected a brick building containing three store rooms facing on Meridian Street; each of these lots are of even width throughout their length and extend from Meridian Street west to an alley. South of appellees' lot is appellant's lot which was described in his deed as "beginning at the northeast corner of lot 30, thence south on the east line of said lot 40 feet, thence west parallel with the north line of said lot to the west line thereof, thence north on the west line to the north line of said lot (thence east) to the place of beginning." Lot 30 was an irregular lot with a

frontage of 78.4 feet on Meridian Street and 45.4 feet wide in the rear; lot 29, the next lot south of lot 30, is also an irregular lot having a frontage of 54 feet on Meridian Street and being 87 feet wide in the rear. Lots 28, 27 and 26 lying south of lot 29 are each 45 feet wide throughout their length from Meridian Street to the alley. A street named McLean Place runs west from Meridian Street along the south line of lot 26. The addition in which all these lots are contained—Lazarus and Pierce's Meridian Place Addition to the city of Indianapolis—runs south to the first alley south of McLean Place and west to Illinois Street (the first street west of Meridian). The dividing lines between all the lots mentioned herein run east and west, except between the irregular lots 30 and 29, which line runs northwest from Meridian Street on the line of the Old State Ditch, which was once an open ditch 12 or 16 feet wide and 6 or 7 feet deep (but which no longer exists as an open drain).[1]

The gasoline station (and the brick building west of it) occupy the full width of lot 32, viz: 50 feet south of Twenty-second Street and the foundation of appellees' store building is 49.64 feet wide extending south from lot 32 (lot 31 being 50 feet wide). There is a hedge between appellees' and appellant's lots extending east from the alley in the rear (on the same line an old fence formerly stood), which hedge is 100 feet south of Twenty-second Street. There is a hedge in the front and a board fence in the rear on the appellant's south boundary line—extending all the way from Meridian Street to the alley—and such hedge and fence are each 140 feet south of Twenty-second Street.

These are actual distances measured on the ground,

---

Note 1. A plat of the portion of the addition herein involved was published with the report of the decision of the Appellate Court in this case, 165 N. E. 249.

and are also the exact distances as shown on the plat, and it follows that there was no compensation or allowance made therein for any shortage (of actual ground as against the distance shown by the plat) that might exist in the tier of lots of which they were a part. The distance along Meridian Street south from Twenty-second Street to McLean Place, as shown by the plat, is 367.4, but actually the distance is 366 feet, being short 1.4 feet. Along the alley line the shortage is 1 foot. (It follows that if such shortage is not absorbed in the irregular shaped lots or elsewhere and if a proportionate part of the shortage must be taken from all lots in the tier, including appellees' lot, then appellees' south wall is over 4 inches south of their property line—unless the limits have been otherwise fixed by adverse possession or in some other manner. In such case their north property line would be over 2 inches north of the present dividing line between their lot and the corner lot at Twenty-second Street.)

The appellees purchased lot 31 in December, 1924, from Mr. and Mrs. T. H. Johnson, who had owned and lived on the property continuously for about twenty-five years. When appellees erected their building in April or May, 1925, they placed its south wall north of what their surveyor informed them was their property line. The bay window of the stairway landing and the eaves of appellant's house project 2 or 3 inches north of the line of this wall and appellees made an inset of 2 or 3 inches in their wall in order to get around the bay window. A dormer of appellant's house overhangs the wall of appellees' building 3 or 4 inches.

Appellant in February, 1904, leased for 3 years with option to purchase, the forty feet off the north part of lot 30 and the house located thereon. He later purchased the property. Appellant, five or six years after he moved into the property, constructed a concrete retain-

ing wall 12 inches high along the front thereof and this wall extends 6 or 7 inches north of the line on which appellee built his building. But the wall was constructed "probably as much as six inches" north of the slope or line of demarcation between the lots. This line of demarcation was plainly marked and was practically on the same line extended as that of the hedge in the rear. Mr. Johnson, appellees' grantor, testified that in cutting his grass and otherwise caring for his yard he had for more than twenty years exercised ownership and control over all of the property as far south as the line of demarcation mentioned.

It is admitted by both parties that the actual distance from McLean Place to Twenty-second Street is 1.4 feet less than is shown on the recorded plat, and appellant contends that the "rule of apportionment" must be applied. This rule is: where a tract of land is subdivided and is subsequently found to contain either more or less than the aggregate amount called for in the surveys of the tracts within it, the proper course is to apportion the excess or deficiency among the several tracts, 9 C. J. 295, except so far as possession has fixed the limits, *Anderson* v. *Wirth* (1902), 131 Mich. 183, 91 N. W. 157. The rule is supported by numerous decided cases, although as stated in *Barry* v. *Desrosiers* (1908), 14 B. C. 126, 128, it is mere guess work to say arbitrarily that the error extended uniformly along the whole frontage, and it is a rule that is more properly prescribed by legislation (as in *Maysville* v. *Truex* (1911), 235 Mo. 619, 139 S. W. 390) than by judicial construction. Its application when only one or two property owners are litigants, out of the many among whom a deficiency is distributed, must be careful in order to avoid adjudicating the rights of those not before the court.

A qualification of the apportionment rule is that when

dimensions are given to each subdivision (lot) except one (or two) which is an irregular space, without dimensions designated, such remnant portion will bear the shortage or receive the overplus. 9 C. J. 296, *Toudouze* v. *Keller* (1909) (Texas Civ. App.), 118 S. W. 185; *Pereles* v. *Gross* (1905), 126 Wis. 122, 105 N. W. 217, 110 A. S. R. 901; *Pereles* v. *Magoon* (1890), 78 Wis. 27, 46 N. W. 1047, 23 A. S. R. 389.

The appellee contends that the "remnant" rule is properly applied also where a tract is subdivided into lots of regular dimensions and a remnant or irregular lot or lots, all with dimensions specified on the plat, and a deficiency or excess subsequently appears; that in such case the deficiency or excess must fall on or be assigned to the irregular tract or tracts, regardless of the dimensions stated on the plat. This view is sustained by the cases of *Barrett* v. *Perkins* (1911), 113 Minn. 480, 485, 130 N. W. 67, and *Baldwin* v. *Shannon* (1881), 43 N. J. L. 596. The appellant denies the correctness of this last application of the remnant qualification of the apportionment rule and says that the shortage must be apportioned among all lots where the dimensions of the irregular lots as well as the regular lots are fixed in the plat. To support this contention he cites: *Newcomb* v. *Lewis* (1871), 31 Ia. 488; *Wyatt* v. *Savage* (1834), 11 Me. 429; *Toudouze* v. *Keller, supra; Pereles* v. *Magoon, supra,* and *Pereles* v. *Gross, supra.*

From our examination of the evidence we are not convinced that a determination of the legal question with reference to the "apportionment" and "remnant" rules is necessary to a decision of this appeal or that the trial court in determining this action in appellees' favor was bound to decide or did decide such question. On the contrary we believe the trial court was obliged to find in favor of the appellees for the reason that the facts proven do not make out a case for the

application of the rule contended for by appellant, even if that rule be correct, which we neither concede, nor decide.

It appears from the evidence that appellant and appellees each actually hold the exact frontage which their deeds or the plat of the addition call for, and that they, or their immediate grantors have held such title for more than twenty years. It does not appear that any other landowner is demanding a contribution to make up a shortage from either appellant or appellees. Appellant alleged in his fourth paragraph of complaint "that no adjustment of any nature whatsoever of said shortage has ever been made by the owners of the lots fronting on Meridian Street" but no evidence was introduced to support such allegation. The other lot owners were not only not made parties, but none of them were called as witnesses. There is no evidence to show which lot (or lots) in the tier of lots, as now held, is less in actual measurement than the measurement shown on the plat, and as to what amount of ground any of such property owners claim or hold, other than appellant and appellees, the record is silent.

If there is a shortage that should be apportioned among all of the lot frontages on the west side of Meridian Street between Twenty-second Street and McLean Place (or between Twenty-second Street and the alley south of McLean Place) and no adjustment or apportionment has ever been made, then all of such frontagers should have been made parties to this action. If there is a shortage and it should be borne by the owners of the irregular shaped lots 29 and 30 (or that portion of lot 30 south of appellant's 40 feet) then such frontagers at least should have been joined. It has been held that two lot owners in the center of a block, which block contains a surplus, are bound by the descriptions in their deed, and are not entitled in an

action between them alone to have their corners shifted so as to apportion their share of the surplus, 9 C. J. 296-7, citing *Elam* v. *Hickman* (1915), 166 Ky. 135, 179 S. W. 17.

There is no rule of law to which our attention has been called or of which we have any knowledge that would, under the pleadings and evidence in the suit between these parties, authorize the taking from appellees of the strip of ground more than four inches wide on which is located the wall of their building, and the possession of which has been held by appellees and their immediate grantors for more than twenty-six years and give it to the appellant who has actually held the full amount of land described in his deed for from 17 to 20 years and who has not been required, or even called upon, by the lot owners south of him to give up any part thereof.

The appellant has not presented evidence sufficient to establish a title in him to the strip of ground in controversy by adverse possession. In *Smith* v. *Smith* (1872), 110 Mass. 302, which he cites, it is said "projecting his eaves over (another's) land is a wrongful act . . . which if continued for twenty years might give him a title to the land by adverse possession." But to acquire a title by adverse possession the occupation must be exclusive, *Philbin* v. *Carr* (1920), 75 Ind. App. 560, 585, 129 N. E. 19; *Lake Erie, etc., Ry. Co.* v. *Wynn* (1920), 73 Ind. App. 266, 127 N. E. 163, the right claimed must be of the title or ownership in fee and no right in the fee can be acquired by adverse possession under a claim of an easement. 2 C. J. 129; *Indianapolis, etc., Ry. Co.* v. *Ross* (1874), 47 Ind. 25. Here appellees and their grantors have exercised ownership, occupation and control of the ground in controversy for more than 26 years, while appellants have enjoyed only an easement. The fact that the eaves,

bay window and dormer on appellant's house have over-hung the strip of ground in question for more than twenty years does not give appellant title to appellees' land under the eaves, etc., and cannot prevent appellees from building on that land if they do so without inter-fering with such eaves, etc., *Keats* v. *Hugo* (1874), 115 Mass. 204.

While we expressly base our decision on the foregoing we may also note that the evidence appears to be suffi-cient to sustain the finding on another theory, viz: that even if appellant's contention concern-ing the application of the remnant qualification of the apportionment rule be correct (which we have indicated we neither concede nor decide), appellees have acquired title to the strip of ground in controversy by adverse possession and also by an agreement of the pro-prietors of the respective tracts of lands establishing a boundary line which agreement existed and continued for more than twenty years. Under the general denial in this action all matters of defense, whether legal or equitable could be given in evidence, and the defense of adverse possession is a proper one thereunder, §1131 Burns 1926; *Graham* v. *Graham* (1876), 55 Ind. 23; *Hogg* v. *Link* (1883), 90 Ind. 346; *Kaufman* v. *Preston* (1901), 158 Ind. 361, 63 N. E. 570; *Gwinn* v. *Hobbs* (1919), 72 Ind. App. 439, 453, 118 N. E. 155. The evi-dence shows that appellees and their grantors have held possession of the 4⅜ inch strip of ground in contro-versy for longer than the statutory period—§302(6) Burns 1926, possession, see §303 Burns 1926, quiet title. It also shows that the line in dispute had been fixed by a practical location by all parties in interest so as to include all the ground in controversy within the bound-aries of appellees' lot, and which they are now estopped to dispute. Appellant's south boundary line had been

located by a hedge and fence, his north boundary by a hedge intersecting his rear lot line at the full distance of forty feet therefrom and his north boundary so located lies entirely south of appellees' wall. This hedge line between the lots was the same as the line of an old fence and was continued to the east or street line by a slope, grade, or line of demarcation.

The evidence on this phase of the case is conflicting and in such situation this court will not undertake to determine the credibility of witnesses, nor weigh or determine the probative force thereof to determine where the preponderance lies. *Smith* v. *Hill* (1929), 200 Ind. 616, 620, 165 N. E. 911.

The evidence does not show that appellant has title to, or that he is entitled to the possession of the strip of ground here in controversy, but it sustains the finding of the court in appellees' favor.

Judgment affirmed.